UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABBAS AL HASSON, | CASE NO. C26-0373-KKE |
| Petitioner(s), | ORDER ON HABEAS PETITION |
| v. | |
| TODD LYONS, et al., | |
| Respondent(s). | |

Petitioner Abbas Al Hasson, proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner is subject to an order of removal which became administratively final on April 3, 2013. On July 23, 2025 Petitioner was detained by Immigration and Customs Enforcement ("ICE"), and remains detained at the Northwest Immigration Processing Center ("NWIPC"). Petitioner asserts four grounds for habeas relief: (1) that his prolonged detention without an individualized hearing violates Due Process; (2) that his prolonged detention violates Due Process in light of *Zadvydas v. Davis*, 533 U.S. 678 (2001); (3) that his detention is "arbitrary and excessive" given his chronic medical conditions; and (4) that the government's failure to "consider or implement less restrictive alternatives to detention," renders his continued detention unconstitutional. For the reasons below, the Court grants the petition.

//

//

ORDER ON HABEAS PETITION - 1

## I.    BACKGROUND

On January 30, 2026 Petitioner Abbas Al Hasson, representing himself, filed a petition for a writ of habeas corpus.  Dkt. No. 1.  He seeks "his immediate release from immigration detention." *Id.* at 4.  Petitioner is a native of Iraq who entered the United States as a refugee on June 23, 1994 through a port of entry in New York, New York.  Dkt. No. 5 at 3.  He received status as a permanent resident on June 23, 1994. Dkt. No. 5 at 3.

In 2004, Petitioner was issued a Notice to Appear in removal proceedings charging him with removability under Immigration and Nationality Act ("INA") section 237(a)(1)(E)(i), 8 U.S.C. § 1227(a)(1)(E)(i).[1]  Dkt. Nos. 8-1, 8-2.  In 2007, Petitioner applied for asylum and withholding of removal.  Dkt. No. 5 at 4.  On July 26, 2010, an immigration judge ("IJ") ordered Abbas removed to Iraq, denying his applications for asylum and withholding of removal.  Dkt. No. 8-3 at 29.  On August 12, 2010, Petitioner appealed his order of removal to the Board of Immigration Appeals ("BIA").  Dkt. No. 6 ¶ 14.  The BIA affirmed the order of removal but remanded Petitioner's case to the IJ to consider voluntary departure.  Dkt. No. 5 at 4; Dkt. No. 6 ¶ 18.  The IJ denied Petitioner's application for voluntary departure, and further ordered he be removed and deported to Iraq on the charge contained in the Notice to Appear.  Dkt. No. 8-5. Petitioner filed an appeal, which the BIA dismissed on April 3, 2013, rendering his order of removal "administratively final."  Dkt. No. 6 ¶¶ 19–20; Dkt. No. 5 at 1, 4.

On May 8, 2013, Petitioner was released on an order of supervision ("OSUP").  *See* Dkt. No. 8-6 at 2–5.  The OSUP states that because DHS had "not effected [Petitioner's] deportation or removal during the time prescribed by law," Petitioner was ordered to "be placed under

---

[1] Petitioner was charged with "knowingly encourag[ing], induc[ing], assist[ing], abett[ing], or aid[ing] any other [noncitizen] to enter or try to enter the United States in violation of law."  Dkt. No. 8-2 at 2.  This charge was based upon Petitioner's "false testimony [and] lying" about his marital status.  Dkt. No. 8-3 at 4.  Specifically, in his naturalization application, Petitioner stated that he had divorced his wife, but upon achieving legal permanent resident status, he allegedly filed an I-130 petition on his wife's behalf. *Id.* at 4–5.

ORDER ON HABEAS PETITION - 2

supervision," and was "permitted to be at large" under certain conditions. *See* Dkt. No. 8-6 at 2, 4 (listing conditions). Among other conditions, the OSUP required that Petitioner "appear in person … upon each and every request of the agency," including on November 4, 2013, and that Petitioner "make good faith and timely efforts to obtain a travel document." Dkt. No. 8-6 at 2.

Although Respondents contend that Petitioner was enrolled in an Alternatives to Detention ("ATD") program (*see* Dkt. No. 5 at 5, 8–10; Dkt. No. 6 ¶ 29), Petitioner's OSUP suggests that he was not required to enroll in an ATD program. *See* Dkt. No. 8-6 at 5 (box next to "Your release is contingent upon your enrollment and successful participation in an Alternatives to Detention (ATD) program" remains unchecked).

In connection with their return, Respondents filed a declaration of Deportation Officer Gabriel Arambula III, who is assigned to the ICE Enforcement and Removal Operations ("ERO") office at NWIPC. Dkt. No. 6. Officer Arambula states that Petitioner "reported a day late for a scheduled ERO check in on or about November 28, 2017," on which date he was "supposed to report with a departure itinerary." Dkt. No. 6 ¶ 26. Specifically, Officer Arambula maintains that Petitioner "agreed to depart from Detroit the week of January 18, 2018," and further "agreed to check-in again with ERO on December 12, 2017." *Id.* However, according to Officer Arambula, Petitioner failed to report for the December 12, 2017 ERO check-in, and subsequently "failed to answer calls from ERO on or around April 30, 2018." *Id.* ¶¶ 27–28. "On November 21, 2018, ERO determined that the Petitioner was an absconder and alternative to detention was inactivated." *Id.* ¶ 29. Despite Officer Arambula's declaration, apart from Petitioner's I-213 form, which was completed on July 23, 2025 following a border patrol officer's "Systems queries," Respondents provide no documentary evidence that shows Petitioner was enrolled in an ATD program which imposed conditions separate from those contained in his OSUP. *See* Dkt. No. 8-4; Dkt. No. 5 at 5

ORDER ON HABEAS PETITION - 3

(stating that on November 21, 2018, Petitioner was "determined to be an ATD absconder and terminated from ATD").

Petitioner's next encounter with ICE did not take place until eight years later in 2025. Dkt. No. 6 ¶ 31. On July 23, 2025, Petitioner "was encountered" by a Customs and Border Patrol officer "at the Pacific Highway Port of Entry after having been refused entry into Canada under the Safe Third Country Agreement." Dkt. No. 8-4 at 3; Dkt. No. 6 ¶ 30. Petitioner was transferred to NWIPC the same day. Dkt. No. 6 ¶ 31. Respondents do not contend that Petitioner was provided with notice stating any reason for his re-detention or an opportunity to be heard.

On October 23, 2025, the BIA granted Petitioner's request for a stay of removal. Dkt. No. 8-8 at 2. On November 20, 2025, Petitioner had a bond hearing but his then-counsel withdrew the bond request. *See* Dkt. No. 8-7 (IJ order specifying "No action: withdrawn by party without prejudice.").

Petitioner is sixty-three years old and suffers from chronic medical conditions, including "spinal fusion, orthopedic hardware, degenerative joint disease, chronic pain, and a history of deep venous thrombosis." Dkt. No. 1 at 5. He reports that his condition has deteriorated while he has been detained. *Id.* Petitioner maintains that he has "a fixed residence in Michigan," and strong family ties in the United States. *Id.* Petitioner has no criminal history. Dkt. No. 8-4 at 3.

## II.   ANALYSIS

### A.   Legal Standard

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to

immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B.      Petitioner's Re-Detention Without a Meaningful Opportunity to Be Heard**

**Warrants Release.**

Petitioner first asserts that his detention for "over six months" without a hearing violates the Due Process Clause.  Dkt. No. 1 at 4.  Petitioner's factual assertions include that: the government has not provided him with an individualized hearing and that he has "long compli[ed] with legal requirements." *Id.* at 4–5.  The parties agree that Petitioner is subject to a final order of removal, and it is Respondents' position that he is detained pursuant to 8 U.S.C. § 1231(a)(6).  Dkt. No. 1 at 2; Dkt. No. 5 at 2.  It is also undisputed that Petitioner was previously released under an OSUP dated May 8, 2013.  Dkt. No. 8-6.  To the extent that Petitioner asserts that notice and a meaningful opportunity to be heard was required upon his return to custody, the Court agrees, and will grant his petition.

Detention of noncitizens following a final order of removal is governed by the INA.  "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682.  During the 90-day removal period, the Government "shall detain" the noncitizen.  8 U.S.C. § 1231(a)(2)(A).

"If the [noncitizen] does not leave or is not removed within the removal period," the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General" pending their removal. *Id.* § 1231(a)(3).  While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, are subject to the same terms of supervision as prescribed under Section 1231(a)(3). *Id.* § 1231(a)(6).

ORDER ON HABEAS PETITION - 5

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal.  *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13(a).  The regulations were "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'"  *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).  Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

"Upon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody."  8 C.F.R. § 241.13(i)(3).  The regulation not only requires a prompt informal interview, but also explains that the purpose of this requirement is "to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."  *Id.* At this informal interview, "the [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future."  *Id.*  Then, "revocation custody review" "will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."  *Id.*

Here, Petitioner asserts that he has never been offered a "hearing" regarding his current period of detention.  Dkt. No. 1 at 4.  Respondents' statement of facts seems to corroborate his assertion: Respondents state only that Petitioner's "OSUP was terminated on November 21, 2018."  Dkt. No. 5 at 10.  But Respondents provide no evidence Petitioner has had the opportunity to be

ORDER ON HABEAS PETITION - 6

heard on the revocation of his OSUP, nor that he was provided notice of the reason for such revocation. *See* Dkt. No. 6 ¶¶ 26–32. Respondents do not provide, for instance, a copy of the notice provided to Petitioner or records reflecting that an interview occurred upon his return to custody.

Respondents, relying on *Martinez Hernandez v. Andrews* (E.D. Cal. Aug. 28, 2025), counter that "Petitioner is not entitled to a pre-detention hearing because he is subject to a final order of removal and has several ATD violations on his record." Dkt. No. 5 at 9 (citing *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025)). The Court rejects Respondents' argument for the reasons below.

First, while Officer Arambula states that Petitioner violated the terms of his ATD (*id.* ¶¶ 26–28), none of the supporting documentation reveals any violations. In fact, the only records provided indicate that Petitioner's OSUP did not require his participation in an ATD program at all. *See* Dkt. No. 8-6 at 4.

Second, *Martinez Hernandez* is factually inapposite to this case. In that case, petitioner was released on an order of recognizance pursuant to 8 U.S.C. § 1226 and then re-detained for allegedly violating the terms of his release. Unlike Petitioner, his release was "contingent on his participation in the Alternatives to Detention (ATD) program[.]" 2025 WL 2495767, at *2. Though the court ultimately rejected his argument that he was entitled to a pre-deprivation hearing, the court ruled that despite his alleged ATD violations, "prompt, post-deprivation process" was required. 2025 WL 2495767, at *12.

Here, Petitioner has had no opportunity to be heard—either before or after his re-detention—on the revocation of his OSUP. Respondents provide no evidence that they notified Petitioner of the reasons for the revocation of his OSUP, nor that he was given a prompt initial informal interview. "Requiring ICE to follow these procedures 'is not mere puffery, a gesture that

ORDER ON HABEAS PETITION - 7

is irrelevant so long as the result is correct … After all, without due process, there is no way to tell whether the result is in fact correct.'" *Bedrosian v. Noem*, 5:25-CV-25-2814-KES, 2026 WL 127800, at \*9 (C.D. Cal. Jan. 15, 2026) (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157, 144 (W.D.N.Y. 2025)). Here, "[h]ad Respondents complied with the regulation and provided Petitioner the process due under it, they might very well have been able to (and may be able to in the future) legitimately revoke Petitioner's release." *Sanchez Alfonso v. Bondi*, 2:25-CV-02748-TL, 2026 WL 395326, at \*6 (W.D. Wash. Feb. 12, 2026).

"The remedy for Respondents' misconduct is Petitioner's immediate release from custody, 'thereby returning [Petitioner] to the status quo before his release was improperly revoked.'" *Sanchez Alfonso*, 2026 WL 395326, at \*6 (quoting *Hoang v. Noem*, No. C25-3177, 2026 WL 89319, at \*5 (C.D. Cal. Jan. 12, 2026)). Multiple courts in this district and others have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release is warranted. *See, e.g.*, *Sanchez Alfonso*, 2026 WL 395326, at \*6–7; *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099–100 (S.D. Cal. 2025); *Nguyen v. Andrews*, 1:26-CV-00015 DAD SCR, 2026 WL 263058, at \*4–5 (E.D. Cal. Feb. 2, 2026), *report and recommendation adopted*, 1:26-CV-00015-DAD-SCR, 2026 WL 412183 (E.D. Cal. Feb. 13, 2026); *Santamaria Orellana*, 2025 WL 2444087, at \*5–8; *Ceesay*, 781 F. Supp. 3d at 163–66. This Court reaches the same conclusion and will grant the petition based on Respondents' regulatory failure.

Having ruled on the merits of the Petition, the Court declines to address the remaining grounds for seeking release.

## I.   CONCLUSION

For these reasons, the Petition is GRANTED.  Dkt. No. 1.

1. Within **ONE DAY** of this order, Respondents are ORDERED to release Petitioner from custody under the conditions of his most recent order of supervision.

2. Within **TWO DAYS** of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody.

Dated this 3rd day of March, 2026.

_Kymberly K Evanson_

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 9